# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BARBARA L. JACKSON, | : | Case No. 3:12-cv-100 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR AN IMMEDIATE AWARD OF BENEFITS; AND (3) THE CASE BE CLOSED.**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI"). This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 11), Plaintiff's Reply (doc. 12), the administrative record[2] (doc. 6), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.  BACKGROUND

## A.  Procedural History

Plaintiff filed applications for DIB and SSI on March 14, 2008, asserting that she has been under a "disability" since November 4, 2007.  PageID 178-81.  Plaintiff claims she is disabled due to fibromyalgia, impaired fine motor skills, tremors, cognitive thinking problems, recovering alcoholism, bipolar disorder, and depression.  PageID 136.

Following initial administrative denials of her application, an administrative hearing was conducted before ALJ Amelia Lombardo on June 29, 2010.  PageID 79-116.  On September 17, 2010, ALJ Lombardo issued a written decision, concluding that Plaintiff was not "disabled."  PageID 51-72.  Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013;

2. The claimant has not engaged in substantial gainful activity since November 4, 2007, the alleged onset date (20 CFR §§ 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; osteoarthritis of the right hip; chronic left ankle instability with residual effects of the ligament reconstructions; obesity; depression; and alcohol abuse in remission (20 CFR §§ 404.1520(c) and 416.920 (c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following additional limitations: alternate sitting and standing every 30 minutes, occasional stooping and crouching; occasional overhead reaching

        bilaterally, unskilled work; and low stress work described as no assembly-line production quotas and not fast paced;

6. The claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965);

7. The claimant was born on April 21, 1956 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR §§ 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the clamant can perform (20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2007, through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)); [and]

12. The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR §§ 404.1535 and 416.935).

PageID 51-64.

      Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner.  PageID 43-45.  *See also Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Plaintiff then filed this timely appeal on April 4, 2012.  Doc. 2.

### B. Plaintiff's Hearing Testimony

At the administrative hearing, Plaintiff testified that she lives alone in a first-floor apartment. PageID 82. She has a high school education, and has previously worked as a medical biller, pharmacy technician, store manager, receptionist, and customer service representative. PageID 83-85.

Regarding her mental impairments, Plaintiff testified that she experiences bouts of deep depression, during which she isolates herself, does not shower or perform household chores, and frequently cries. PageID 98. Plaintiff stated her last episode of depression lasted three weeks. *Id*. During that time, Plaintiff cried every day. PageID 98-100. She testified that, on average, she cries fifteen days a month. PageID 103. Plaintiff also testified that she has suicidal thoughts, and experiences panic attacks at least once per month due to hypervigilence. PageID 102-03.

In addition, Plaintiff testified that she has difficulty maintaining concentration, cannot comprehend what she is being asked, and is forgetful. PageID 101. She further testified that she experiences visual hallucinations, which she believes are a side effect of her medication. PageID 92-93. She stated that she goes to individual and/or group therapy three-to-four days per week. PageID 89, 99. Plaintiff acknowledged having problems with alcohol in the past but, at the time of the hearing, she testified she has been sober for approximately three years. PageID 86.

Plaintiff also testified the pain she experiences significantly interferes with her physical abilities. PageID 96-98. Plaintiff estimates that she can walk approximately five minutes at a time. PageID 96-97. While she acknowledged complying with her physician's orders to take short, periodic walks, Plaintiff stated that they have not improved her ability to walk further

without incident. *Id*. Plaintiff testified that she can only stand for three to four minutes at a time, after which she begins shaking. PageID 97. She stated that she struggles to sit because it causes pain. *Id*. As a result of her medications, Plaintiff's hands tremor, and she often loses control of objects she holds. PageID 97, 103-04.

Plaintiff additionally testified that she experiences pain daily and, although medication does help, she is never fully relieved from the pain. PageID 96. Daily activities such as washing the dishes and vacuuming hurt her back, and it may take her days to recover from performing such tasks. *Id*. Due to the recovery time, Plaintiff stated that she often neglects her household chores. *Id*. Plaintiff also testified that, due to the pain, she does not have motivation, is weak, and frequently takes naps. PageID 107.

### C. Vocational Expert Testimony

Mark Pinti, a Vocational Expert ("VE"), testified at the hearing. *See* PageID 108-13. The VE testified that, based on Plaintiff's age, education, RFC, and work experience, she could not perform her past relevant work. PageID 110. Nonetheless, given her RFC, the VE testified that Plaintiff could perform approximately 10,000 jobs at the light exertional level, such as a laundry folder or machine tender. PageID 111-12.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on appeal is to determine: (1) whether the ALJ's non-disability finding is supported by substantial evidence; and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3)[3]; *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46

---

[3]The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

(6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found a claimant disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B. "Disability" Defined**

To be eligible for DIB and/or SSI benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the

ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

Plaintiff argues that the ALJ erred with regard to her mental impairments by refusing to give controlling weight to the opinions of treating psychiatrists, Maria Mathias, M.D. and Dong Moon, M.D., as well as her treating primary care physician, Robert Sawyer, M.D. Doc. 9 at PageID 1614-21. For the reasons that follow, the Court finds Plaintiff's argument to be meritorious, and the ALJ's findings to be unsupported by substantial evidence.

### A. Treating Mental Health Professionals[4]

#### 1. Dr. Mathias

Plaintiff began treatment at South Community, Inc., a mental healthcare facility, in February 2008. *See* PageID 1156-59. In addition to seeing therapists and nurses, Plaintiff was treated by Dr. Mathias, a psychiatrist at South Community. *Id*. On February 22, 2008, Dr. Mathias initially examined Plaintiff and observed her to be depressed, agitated, irritable, restless, and intense. *Id*. Dr. Mathias diagnosed Plaintiff with bipolar disorder, alcohol dependence, and post-traumatic stress disorder ("PTSD"). *Id*. She also assigned a GAF score of 45-50.[5] PageID 1158.

On October 22, 2008, Dr. Mathias reported the same diagnoses as in February 2008, and noted Plaintiff's "increased anxiety" and "fleeting suicidal ideation." PageID 984. Dr. Mathias also reported that Plaintiff had gained 22 pounds during the previous two months, and was increasingly tearful -- which she noted were objective signs of Plaintiff's depression. *Id*. Dr. Mathias stated, "[Plaintiff] has a chronic mental health condition, Bipolar Disorder, which at this point is not stable and would limit her from working. Mood is only one symptom of Bipolar Disorder and it is no longer stable as noted by the above symptom of suicidal ideation." *Id*. Dr.

---

[4] Although Plaintiff's medical records have been adequately summarized in her Statement of Errors, the Commissioner's memorandum, and the ALJ's decision, *see* doc. 9 at PageID 1604-13; *see* doc. 11 at PageID 1628-32; PageID 51-64, and the Court will not fully repeat them entirely here, Plaintiff's assignment of error necessitates a discussion of the opinions of Drs. Mathias, Moon, and Sawyer.

[5] A Global Assessment of Functioning ("GAF") score of 45-50 (41-50, inclusively) indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.* no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) ("DSM-IV").

Mathias' assessment is substantiated by her treatment notes, which additionally document Plaintiff's fatigue, hair loss as a side effect of medication, and tremors. PageID 871, 873, 875.

In July 2009, Dr. Mathias co-signed interrogatories along with Cynthia VanAusdal, R.N., a South Community advanced practice psychiatric nurse with prescriptive authority, *see* PageID 1041-49, which report their shared shared opinion that Plaintiff is unable, among other activities, to be prompt and regular in attendance; respond appropriately to supervision, co-workers, and customary work pressures; withstand the pressure of meeting normal standards of work productivity and work accuracy; sustain attention and concentration to meet normal standards of work productivity; maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance and be punctual; complete a normal workday and workweek without interruption from psychologically and/or physically based symptoms; respond appropriately to changes in a routine setting; and get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes, owing to stress and anxiety. *Id*.

### 2. Dr. Moon

Dr. Moon began treating Plaintiff on January 2, 2008. PageID 434. Following his initial psychiatric evaluation, Dr. Moon diagnosed Plaintiff with bipolar disorder NOS, and reported Plaintiff to be markedly[6] limited in her ability to: perform activities within a schedule; maintain regular attendance; sustain an ordinary routine without special supervision; work in coordination or proximity to others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically-based symptoms; interact appropriately with the general public; get along with coworkers/peers without distracting them or exhibiting

---

[6] Whereas "moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F.App'x 977, 980 (6th Cir. 2011), "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(C) *et seq*.

behavioral extremes; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness.  PageID 431, 711.  Dr. Moon also opined, at that time, that Plaintiff was unemployable.  PageID 709.

Dr. Moon's treatment notes document Plaintiff experiencing mood swings, crying spells, shakiness, and nightmares.  PageID 434-36.  They also include his objective observations of Plaintiff's anxiousness, frustration, restlessness, agitation, and depression.  *Id*.  In March 2008, Dr. Moon responded to a Bureau of Disability Determination questionnaire, in which he opined, "[a]s of 1/23/08, [Plaintiff is] not able to tolerate any work related stress."  PageID 438-40.

### 3. Dr. Sawyer

Dr. Sawyer, an internist, began treating Plaintiff in August 2006, and continued treatment through the date of the administrative hearing.  PageID 1586-91.  Over the years, he treated Plaintiff for a number of physical impairments, as well as her mental impairments.  *Id*.  In responding to interrogatories in June 2010, Dr. Sawyer noted the effects of Plaintiff's "chronic depression with overlapping bipolar disorder."  PageID 1586.  Specifically, he opined that Plaintiff's mental impairments exacerbate her complaints of severe pain, stating: "[Plaintiff's] bipolar disorder makes coping strategies and response to stressors poor" and her "prior suicide attempt [in November 2007] caus[ed her] admission to [the] Kettering Medical Center…."  PageID 1588. Dr. Sawyer also opined that Plaintiff would be unable to: be prompt and regular in her attendance if employed; respond appropriately to supervision, co-workers, and customary work pressures; withstand the pressure of meeting normal standards of work activity; behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; perform activities within a schedule and maintain regular attendance; and/or complete a normal

work day and work week without interruption from psychologically and/or physically-based symptoms. PageID 1588-91.

In addition, Dr. Sawyer noted that Plaintiff has a history of suicidal ideation, which is exacerbated by stressful situations. PageID 1588. Specifically, he stated: "[Plaintiff's] workplace previously contributed significantly to decompensation and in all likelihood would do so again in the future." *Id.* Regarding Plaintiff's inability to handle stress, Dr. Sawyer added, "[u]nfortunately, [Plaintiff] previously responded to stress of work with self-medication with alcohol. [She] has been abstinent with alcohol as of late but certainly at risk for recurrent abuse with work stressors." PageID 1589. Dr. Sawyer further noted that Plaintiff has a history of "excessive emotional outbursts" at her previous jobs; "demonstrated conflict when interacting with other clients in group therapy when under stress"; and was "terminated from [her] last place of employment due to [her] unreliability." PageID 1590.

### B. Treating Physician Rule

Generally, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Com'r of Soc. Sec.*, 502 F. 3d 532, 540 (6th Cir. 2007). Under the "treating physician rule," the ALJ is required to "generally give greater deference to the opinions of treating physicians than the opinions of non-treating physicians because: 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakey v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ must give controlling weight to a treating source, so long as he or she finds the opinion well supported by

medically acceptable data, and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician's opinion, based on the evidence in the record, and these reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Wilson*, at *id*. These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p, 1996 SSR LEXIS 9, at *11-12, 1996 WL 374188, at *5 (July 2, 1996). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407.

### C. The ALJ Improperly Weighed the Mental Health Opinions of Record

In rejecting the opinions of Drs. Mathias, Moon, and Sawyer, the ALJ provided the following limited analysis:

> When evaluated pursuant to the above regulations, neither the opinion of Dr. Sawyer or Dr. Mathias or Dr. Moon can be given controlling, or even significant weight.… The majority of Dr. Sawyer's opinion involves the claimant's mental functioning. As he is not a mental health professional, his opinion in this area is afforded little weight. In any event, the claimant has repeated[ly] told Dr. Sawyer that she is doing well mentally, statements which are echoed in her treatment notes from South Community. As his opinions are not supported by and are inconsistent with other medical evidence, they are given little weight. Dr. Mathias did not even opine that the claimant was permanently and totally disabled. Her pessimistic assessment is inconsistent with her treatment notes which demonstrate that after just a few months of therapy, the claimant was "functioning fairly well -- mood cognitively and relating to others" and was "progressing well in general" [citing PageID 859, 864]. Dr. Moon was not a treating source when he completed a form for a local welfare agency, having only

>seen the claimant once, and in any event, in neither document does he indicate that the claimant would be permanently and totally disabled because of her mental impairments.

PageID 61. The ALJ gave no other reasons for rejecting these three opinions. As such, the Court finds the ALJ's analysis deficient, and unsupported by substantial evidence.

Social Security regulations require the ALJ, when weighing opinions of treating and non-treating sources, to consider a number of factors, including: the length of the treatment relationship; the frequency of examination; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the treating physician. 20 C.F.R. § 404.1527; *Wilson*, 378 F. 3d at 544. Opinions of one-time examining physicians, record-reviewing physicians, and Medical Experts who testify during administrative hearings must also be weighed under these same factors. *See* 20 C.F.R. § 404.1527(d)-(f); *see also* Social Security Ruling 96-6p.

Here, the ALJ failed to conduct a proper analysis under the regulations with regard to the opinions of Drs. Sawyer, Mathias, or Moon. While the Court recognizes that Dr. Sawyer is not a mental health specialist, this is only one factor to be considered under 20 C.F.R. § 404.1527. Dr. Sawyer began treating Plaintiff for both her mental and physical impairments in August 2006, and continued treatment through the time of the administrative hearing. *See* PageID 1586. As such, Dr. Sawyer four years' worth of observations provide a "detailed, longitudinal picture" of Plaintiff's medical impairments that cannot be obtained from objective medical findings alone or from reports of consultants' examinations. *See Blakey*, 581 F.3d 406. Dr. Sawyer diagnosed Plaintiff with chronic depression, bipolar disorder, chronic pain syndrome, and fibromyalgia, and has provided detailed treatment notes for all of those impairments. *See* PageID 1587-88. Moreover, the evidence shows that Dr. Sawyer's opinion regarding Plaintiff's mental RFC is

based upon his thorough review of her mental and physical impairments, and is grounded upon his in-depth knowledge of Plaintiff's work, social, and medical history. *Id*. Other than stating that his opinion is inconsistent with the other medical evidence of record, the ALJ made no effort to consider Dr. Sawyer's opinion in light of the requirements established by 20 C.F.R. § 404.1527. By so acting, the ALJ has deprived the Court of its ability to conduct a meaningful review of her decision. *See Wilson*, 378 F.3d at 544.

The ALJ's analysis in rejecting the opinions of Drs. Mathias and Moon is deficient for the same reason. Whereas the ALJ emphasized that neither doctor opined that Plaintiff is "permanently or totally disabled," and bases her rejection of both opinions on this point, *see* PageID 61, Social Security regulations mandate that the question of whether or not a claimant is disabled is an administrative issue reserved solely to the province of the Commissioner. 20 C.F.R. §§ 404.1527(c)-(d). *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). Thus, even if Plaintiff's physicians had opined that she is "permanently or totally disabled," such a statement would not be determinative of disability. *See* 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will find that you are disabled"); *see also* Soc. Sec. Ruling 96-5p, 1996 SSR LEXIS 2, at *2 ("The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner").

Although the ALJ asserts Plaintiff's treatment notes from South Community show Plaintiff was "doing well mentally," *see* PageID 61, she cites only two out of the 1,200 pages of medical records in this case in support of that statement. *Id*. (citing PageID 859, 864). While the Court's review of the record reveals several notes similar to the two cited by the ALJ --

indicating that Plaintiff was, at times, making progress; or, that her depression and/or bipolar disorder were, on a particular date, well-controlled, *see* PageID 864, 1180, 1200, 1202, 1323, 1332 -- the entirety of the record well supports the opinions of Drs. Mathias and Sawyer (*i.e.*, that Plaintiff is significantly more limited than determined by the ALJ, and was disabled, in fact, since her alleged onset date of disability).

For instance, one of the two records cited by the ALJ for the premise that Plaintiff was "doing well mentally," is a one-sentence "Group Progress Note" authored by therapist Michael Wils on July 29, 2008. PageID 61, 864. This provides that Plaintiff was "functioning fairly well -- mood cognitively and relating to others." *Id.* Similarly, the "Group Progress Note" signed by Mr. Wils from the two prior sessions found Plaintiff to be "functioning fairly well but somewhat anxious and inattentive," and recorded Plaintiff's statement: "I feel really good." PageID 856, 860. However, the handful of notes which reflect Plaintiff's days of "doing well" are wholly outnumbered by the other records indicating her recurring episodes of depression, which continued through the date of the administrative hearing.

In June 2008, for example, one month prior to Mr. Wils' aforementioned "positive" reports, another therapist at South Community, David Johnson, noted Plaintiff's increased "urges" and "cravings" to use alcohol -- which is a form of Plaintiff's self-medication, according to Dr. Sawyer. *See* PageID 846; 1589. Mr. Wils' own notes from June 2008 -- one month prior to the time he documented Plaintiff to be doing well -- report Plaintiff as depressed and "recently tearful." PageID 842, 844. South Community therapists' notes from May 2008 contain their objective observations of Plaintiff as depressed, anxious, worried, and tearful, as well as Plaintiff's subjective reports of difficulty sleeping, increase in pain, and weight gain of more than 20 pounds in the preceding months. PageID 827, 829, 838. Similarly, their notes through

-15-

the date of the administrative hearing do not support the assertion that Plaintiff's mental impairments were under control, as they repeatedly document Plaintiff's ongoing struggle with depression, decreased energy and memory, increased fatigue and physical pain, and "episodic visual hallucinations and being awakened by hearing her name." *See*, *e.g.*, PageID 1374, 1508, 1510, 1512, 1514, 1533, 1539, 1542, 1561.

The ALJ fails to identify the substantial evidence which supports her finding that Plaintiff is "doing well mentally" and, in so doing, overlooks the entirety of the South Community therapists' notes (discussed *supra*); the opinions of Drs. Mathias and Sawyer (same); the reports of Nurse VanAusdal, who consistently opined in 2008, 2009 and 2010 that Plaintiff experiences marked limitations in a number of functional domains, and did not show the level of improvement which the ALJ asserts, *cf.* PageID 61, 1001-02, 1033-40, 1041-49, 1583-84; and the outpatient records from the Miami Valley Hospital, *see* PageID 924-64. As such, the ALJ's rejection of the opinions of Drs. Sawyer, Mathias, and Moon -- on the notion of inconsistency with the record -- is unsupported by substantial evidence. "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting SSR 96-2p, 1996 SSR LEXIS 9, at *9).

In addition to the foregoing, the ALJ provided no analysis whatsoever why the opinions of Drs. Sawyer, Mathias, and Moon were rejected in favor of the conflicting assessments of record-reviewing, non-examining, non-treating psychologists Kevin Edwards, Ph.D. and Douglas Pawlarczyk, Ph.D. -- whom the ALJ identifies in her opinion as "the BDD reviewing psychologists" and discusses at Step Three, but at no point at Step Four -- which were given significant weight. *See* PageID 56-57. The Sixth Circuit recently held that the ALJ may not

criticize alleged inconsistencies between a treating opinion and other record evidence, while not acknowledging equivalent inconsistencies in the opinions of consultative doctors. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378-79 (6th Cir. 2013). "A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation [20 C.F.R. § 404.1527] requires." *Id.* (citations omitted). Here, the ALJ did just that, and misapplied Social Security regulations. The ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence." *Blakley*, 581 F.3d at 407.

Accordingly, and based upon the foregoing, the Court finds the ALJ's decision -- to not defer to the opinions of Drs. Sawyer, Mathias, and Moon without conducting a proper analysis -- to be unsupported by substantial evidence. Therefore, the ALJ's decision should be reversed. *See id.*[7]

### D. Remand for an Immediate Award of Benefits is Appropriate

Recognizing that the ALJ's non-disability determination is unsupported by substantial evidence, the Court must next determine whether remanding for further administrative proceedings is appropriate. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan*, 501 U.S. at 100. The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *See Faucher v. Sec'y of H.H.S.*, 17 F. 3d 171, 176 (6th Cir 1994); *Lowery v. Comm'r of Soc. Sec.*, No. 3:10-cv-427, 2011 U.S. Dist. LEXIS 154323, at *31-32 (S.D. Ohio Dec. 8, 2011) (Newman,

---

[7]In light of this finding, it unnecessary to address Plaintiff's remaining alleged error -- that the ALJ erred in assessing her credibility. *See* doc. 9 at PageID 1621-22.

M.J.), *adopted by* 2012 U.S. Dist. LEXIS 40333 (S.D. Ohio Mar. 23, 2012) (Rice, J.); *Valentine v. Astrue*, No. 3:10-cv-470, 2011 U.S. Dist. LEXIS 154178, at *29-30 (S.D. Ohio Dec. 7, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 36736 (S.D. Ohio Mar. 19, 2012) (Rice, J.).

Such is the case here.  The proof of disability -- including the opinions of Drs. Sawyer, Mathias, and Moon, and the lengthy record underlying their opinions as to the severity of Plaintiff's mental impairments -- is great, and remand will serve no purpose other than delay. *See Faucher*, 17 F.3d at 173-76.  Therefore, all substantial factual issues have been resolved, and the record reflects that Plaintiff is disabled, and has been since November 4, 2007 -- her alleged onset date of disability.  Accordingly, the Court recommends remanding for an immediate award of benefits.

## IV.  RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that:

1. The ALJ's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE,** and **REVERSED**;

2. This case be **REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR AN IMMEDIATE AWARD OF BENEFITS**, consistent with this Report and Recommendation and the Social Security Act;

3. This case be **CLOSED**.

June 25, 2013                                                                                    s/Michael J.  Newman
                                                                                                          United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).